Filed 6/30/21  In re S.E. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re S.E., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT, <br> Plaintiff and Respondent, <br> v. <br> Y.T., <br> Defendant and Appellant. | A161242 <br><br> (Sonoma County <br> Super. Ct. No. DEP-6175) |

Appellant Y.T. (Mother) appeals from a dispositional order in dependency proceedings regarding her daughter S.E., arguing that certain of the jurisdictional findings are not supported by substantial evidence and that the juvenile court erred in failing to make the findings required by Welfare and Institutions Code, section 361, subdivisions (d) and (e).[1]  We affirm.

**BACKGROUND**

Mother and T.E. (Father) are the parents of S.E., who was born in 2011.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

In December of 2016, Santa Rosa police responded to a domestic violence incident in which Mother attempted to break into the home of Father's sister, and hit and pushed Father. S.E. was present but did not see the incident. Mother was arrested for domestic violence (Pen. Code, § 243, subd. (e)(1)) and Father obtained an emergency protective order that expired later that month.

In May of 2017, Mother obtained a family court judgment awarding her full legal custody of S.E., apparently by default after Father did not appear in court. Once shelter-in-place began in the spring of 2020, Mother and Father reached a verbal agreement whereby S.E. lived with Father, and Mother would stay at Father's house in Santa Rosa and homeschool S.E. during the week.

On June 22, 2020, while staying at Father's house, Mother accused him of taking her keys and threatened him with a knife. The next day, Father returned home and Mother began screaming at him and calling him names. Father called the Santa Rosa police, who responded, spoke with Mother, and then left. Mother then locked Father out of the house. When he used his key to enter the front door, she grabbed his phone, screamed at him, and scratched his face. S.E. was present, crying, and screaming for Mother to stop. Father again called the police, who arrived and arrested Mother for felony assault with injury (Pen. Code, § 273.5, subd. (a)). Police again obtained an emergency protective order.

On June 30, Father filed a request for a domestic violence restraining order against Mother, which was granted and valid until July 21.

On July 21, a family court hearing was held at which the family court continued the temporary restraining order protecting Father and S.E. from Mother to November 4, and awarded sole legal and physical custody of S.E.

2

to Father, with weekly supervised visitation for Mother. Mother was ordered to deliver S.E. to the lobby of the Sonoma County Sheriff's Department at 6:00 p.m. on July 22. A further family court hearing was set for November 4.

On July 22, Mother contacted the Santa Rosa Police Department and indicated that S.E. had previously disclosed sexual abuse by Father. Detective Richard Boehm set up a forensic interview with S.E. for that afternoon. S.E. told the interviewer that Father "would give her money to play the computer game Roblox in exchange for 'sexual abuse.'" According to Detective Boehm, S.E. "was unable to give specific details of the alleged sexual assaults," her "answers continued to be extremely vague and the verbiage she used was not consistent with the answers from a juvenile around the age of nine years old," "[s]ome of [her] responses . . . appeared rehearsed or coached," and she "continued to fixate on the upcoming criminal case and court custody order" involving her parents. S.E. then participated in a sexual assault forensic examination, at the conclusion of which the forensic nurse reported that S.E. had told her that Mother would "commonly check inside her vagina [] to make sure she is not dirty" and observed injury to S.E.'s vagina "consistent with [Mother] forcefully spreading apart her vagina to examine it." Detective Boehm concluded that S.E. should not be returned to the custody of either parent until further investigation could be completed and placed her "on a 300 W&I hold for her safety."

On July 24, the Sonoma County Human Services Department (Department) filed a petition with respect to S.E. under section 300. The petition alleged that that S.E. had suffered serious physical harm caused by Mother forcing her legs apart to inspect her vaginal area (§ 300, subd. (a)), that S.E. was at substantial risk of serious physical harm because her parents had exposed her to domestic violence, including through the June

3

2020 and December 2016 incidents resulting in Mother's arrests (§ 300, subd. (b)(1)), and that Mother had placed S.E. at substantial risk of serious emotional damage by telling S.E. "about a past incident where the father allegedly burned down a building (no evidence of this occurring)," by performing "physical acts on the child's genitalia," by "routinely plac[ing] the child directly in the middle of an on-going contentious Family Court custody battle," and by telling S.E. "age-inappropriate details of the custody battle and about 'who [Father] really is' so that the child will be afraid of him" (§ 300, subd. (c).) The petition also alleged that S.E. had been sexually abused by Father, based on her statements during the forensic interview (§ 300, subd. (d).)

A contested jurisdictional hearing was held on October 5 and 9, 2020, at which Mother and Father both testified. At the conclusion of the hearing, the juvenile court found that the section 300, subdivision (a) allegations had not been proved by a preponderance of the evidence, but sustained the allegations under section 300, subdivisions (b) and (c). The juvenile court dismissed the allegations under section 300, subdivision (d) at the request of the Department, and also concluded that in any event those allegations had not proved by a preponderance of the evidence. The court ordered that Father retain custody with family maintenance services and that reunification services be provided to Mother, and set a six-month review hearing for April 1, 2021.

Mother appealed.

While Mother's appeal was pending, the April 1 six-month review hearing took place. On May 10, 2021, we granted Mother's unopposed request for judicial notice of the April 1 minute order and custody order, which indicate that at the hearing the juvenile court terminated Mother's

reunification services, awarded full custody to Father with weekly supervised visitation for Mother, and terminated dependency jurisdiction.

## DISCUSSION

Mother argues that (1) substantial evidence does not support the jurisdictional allegations under section 300, subdivision (c), and (2) the juvenile court erred in failing to make certain findings required by section 361, subdivisions (d) and (e).

## I.   *Mother's Argument Regarding Jurisdiction Is Nonjusticiable*

Mother's first argument is that substantial evidence does not support the allegations of "substantial risk of serious emotional damage" under section 300, subdivision (c).  However, Mother concedes that because she does not challenge the jurisdictional allegations under section 300, subdivision (b), any decision we might render on the section 300, subdivision (c) allegations will not result in a reversal of the juvenile court's jurisdictional order.  We therefore conclude that Mother's argument is nonjusticiable.

As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings.  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  We nonetheless retain discretion to consider the merits of a parent's appeal (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493), and often do so when the finding "(1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.*, *supra,* at p. 454); (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.' " (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763; see *In re Madison S.* (2017) 15 Cal.App.5th 308, 328–330; *In re Briana V.* (2015) 236 Cal.App.4th 297, 308–311.)

5

Mother argues that review is warranted here because the jurisdictional findings "serve as the basis for the dispositional order." But she ignores the second part of the quote from *In re Drake M.*, stating that review is warranted where the findings "serve[] as the basis for dispositional orders *that are also challenged on appeal.*" (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 762, italics added.) For example, in *In re Alexis E.*, *supra*, 171 Cal.App.4th 438, the juvenile court's finding of jurisdiction over the minors because of the father's use of marijuana served as the basis for part of the dispositional order requiring him to participate in drug counseling and testing, which the father also challenged. (*Id*. at pp. 450, 453–454.) Mother has not raised any similar challenges to the dispositional order in this case.[2] In sum, we do not agree the jurisdictional findings serve as the basis for dispositional orders that are also challenged on appeal.

Mother also argues that the jurisdictional findings could have the potential to impact the future of these dependency proceedings because the juvenile court will measure her progress based on the "history and evidence it found to be true at the time of the jurisdictional hearing," and that the findings could impact "future family law proceedings," including any attempt to modify the juvenile court's exit order in family court. But as noted, the underlying dependency has concluded and the juvenile court's jurisdiction has been terminated. Mother has not identified any ongoing family court

---

[2] Mother does briefly argue that the finding serves as the basis for the dispositional order because during argument by counsel, the juvenile court stated that the "(c)(2) allegation, in my mind, adequately and appropriately describes what happened, and that's what I'm thinking." It is unclear exactly what was meant by this statement, but in any event, we do not agree that it shows that those allegations "serve[] as the basis for dispositional orders that are also challenged on appeal" within the meaning of *In re Drake M.*, *supra*, 211 Cal.App.4th 754.

proceedings, nor suggested that she intends to challenge the juvenile court's exit order. (See *In re I.A.*, *supra,* 201 Cal.App.4th at p. 1495 [rejecting argument that jurisdictional finding should be reviewed based on unspecified impact on future family law proceedings as "speculative"].)

Finally, Mother argues that the we should review the findings because they are "pernicious" and "carry a particular stigma," as in *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452. But in that case, the allegations were that the mother failed to protect the children from father, a registered sex offender with a lengthy criminal history including sexual assault, and therefore failed to protect them from a substantial risk of sexual abuse. (*Id.* at pp. 1449–1450, 1452.) We do not agree that the allegations here are similarly "pernicious" and will decline to exercise of our discretion to review them.

## II. *The Juvenile Court Did Not Err In Failing to Make the Findings Required By Section 361, subdivisions (d) and (e)*

Mother's second argument is that the juvenile court erred in entering its dispositional order at the October 9 hearing without making the findings required by section 361, subdivision (d), which provides: "A dependent child shall not be taken from the physical custody of his or her parents with whom the child did not reside at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent to live with the child or otherwise exercise the parent's right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's physical custody." She also argues that the juvenile court erred in failing to state the

7

specific facts supporting the removal order, as required by section 361, subdivision (e).[3]

Although the Department does not so argue, it appears this issue is moot because the October 9 dispositional order is no longer in effect, having been superseded by the April 1, 2021 "exit order" of the juvenile court when it terminated dependency jurisdiction. (See *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1165 ["the exit order 'shall be a final judgment and shall remain in effect after [the juvenile court's] jurisdiction is terminated' "]; see also § 362.4, subd. (b) [custody and visitation orders "continue until modified or terminated by a subsequent order of the superior court"].) The October 9 dispositional order no longer adversely affects Mother, and nothing we could do in this appeal can grant her any relief from an order that no longer exists. (See *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"]; *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].)

In any event, Mother's argument fails on the merits.

Section 361, subdivision (d) is not applicable here because the juvenile court's dispositional order did not "take" S.E. from Mother's "physical custody." As discussed, on July 21, Father was granted full legal custody of

---

[3] "The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home or, if the minor is removed for one of the reasons stated in paragraph (5) of subdivision (c), whether it was reasonable under the circumstances not to make any of those efforts . . . . The court shall state the facts on which the decision to remove the minor is based."

S.E. by the family court. The next day, S.E. was taken into protective custody. The petition initiating these dependency proceedings was filed on July 24. At a hearing held September 14, S.E. was returned to Father's physical custody. Thus, Mother did not have physical custody of S.E. at any time between the start of these dependency proceedings and the challenged dispositional order, and at the time of the dispositional hearing on October 9, Father had both legal and physical custody. And so the October 9 dispositional order, in an attachment titled "In-Home Placement With Formal Supervision," ordered that "[c]ustody of the child is *retained* by" Father. Section 361, subdivision (d) does not apply.

On reply, Mother very briefly argues that the "Dispositional Attachment: In-Home Placement With Formal Supervision" box on Judicial Council Form JV-415 "would seem to be the only applicable box" where "the court is removing from a noncustodial parent pursuant to section 361, subdivision (d) and the custodial parent is retaining custody." But whatever the appropriate box is in that circumstance is irrelevant for our purposes, because the court here did not remove S.E. from Mother's physical custody pursuant to section 361, subdivision (d).

For the same reasons, Mother's arguments that the trial court failed to "state the facts on which the decision to remove the minor is based" under section 361, subdivision (e) fails. Because the October 9 dispositional order did not "remov[e] . . . the minor from his or her home" but rather ordered that Father *retain* custody, that subdivision does not apply. (*Ibid.*)

**DISPOSITION**

The juvenile court's order is affirmed.

_____
Richman, Acting P. J.

WE CONCUR:


_____
Stewart, J.


_____
Miller, J.



A161242